ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| GILBERTO RICARDO DÍAZ BUENO, Apelada, v. ANA CECILIA RÍOS PÉREZ, Apelante. | KLAN202400908 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan. Civil núm.: SJ2023CV01033. Sobre: desahucio; cobro de dinero; incumplimiento de contrato. |
|---|---|---|

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

La parte apelante, señora Ana Cecilia Ríos Pérez (señora Ríos), instó este recurso el 10 de octubre de 2024. En él, solicita que este Tribunal revoque la *Sentencia* dictada sumariamente por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 5 de agosto de 2024, notificada al día siguiente[1]. Por virtud de dicha sentencia, el foro primario declaró con lugar la demanda. En su consecuencia, dio por incumplido el contrato de compraventa suscrito entre las partes litigantes, por lo que declaró la rescisión del contrato. Además, concluyó que, a la luz de que la señora Ríos había ocupado la propiedad inmueble en controversia desde el 19 de octubre de 2019, sin pagar renta, le imputó el pago de $800.00 mensuales en concepto de renta y la condenó al pago de $47,200.00 en ese concepto. Finalmente, le impuso el pago de $7,000.00, por concepto de honorarios y gastos del pleito, según fueran pactados en el contrato de compraventa, y ordenó que desalojara la propiedad inmueble[2].

---

[1] *Véase*, apéndice del recurso, a las págs. 212-216.

[2] **Valga apuntar que el tribunal nada dispuso en cuanto a la *Reconvención*** instada por la señora Ríos el 9 de mayo de 2023. *Id.*, a las págs. 15-19.

Número identificador

SEN2024_____

Con el beneficio de la comparecencia de la parte apelada, resolvemos.

I

Este caso dio comienzo con la presentación de una demanda juramentada instada por el señor Gilberto Ricardo Díaz Bueno (señor Díaz) el 2 de febrero de 2023[3]. En ella, alegó que el 27 de marzo de 2008, había adquirido un inmueble de manos de Multi Source Corporation, representada por el señor Ángel Álvarez Lau (señor Álvarez). Se trataba de un inmueble localizado en la Urb. Puerto Nuevo, Bo. Monacillos de Río Piedras, en el que ubica una casa de bloques de cemento, que consta de dos dormitorios, sala, comedor, cocina y cuarto de baño.

Según pactado, la compraventa fue por la suma de $55,000.00. De esa suma, $52,000.00 fueron garantizados mediante escritura de constitución de hipoteca, cuyo pagaré hipotecario al portador fue entregado al señor Álvarez.

Posteriormente, allá para el 19 de octubre de 2019, el señor Díaz y la señora Ríos acordaron la compraventa del inmueble en controversia, la asunción de la hipoteca que gravaba el inmueble por parte de la señora Ríos y la constitución de otra hipoteca a favor del señor Díaz[4].

Conforme el acuerdo entre las partes, el inmueble era adquirido por la suma total de $89,000.00. De ese total, la señora Ríos retuvo la cantidad de $19,000.00, con el fin de saldar la hipoteca que gravaba la propiedad; los restantes $70,000.00 se garantizarían con otra hipoteca a favor del vendedor señor Díaz. El contrato proveyó, además, los plazos con los que contaría la señora Ríos para saldar la deuda asumida. El pago final sería por la cantidad de $10,000.00 y vencería el 30 de diciembre de 2022.

La controversia entre las partes litigantes se suscitó cuando la señora Ríos se dispuso a, conforme acordado, liberar la propiedad de la

---

[3] *Véase*, apéndice del recurso, a la pág. 1-4.

[4] *Íd.*, a las págs. 25-30. Este documento aparece inicialado y firmado por las partes litigantes; no obstante, **no aparece suscrito por el abogado-notario autorizante. Tampoco surge del expediente que la hipoteca hubiera sido inscrita en el Registro de la Propiedad Inmueble**.

hipoteca previa. Según alegado por ella, el acreedor hipotecario, señor Álvarez, le informó que el balance de cancelación de la deuda hipotecaria no eran los **$19,000.00** que le había informado el señor Díaz, sino la suma de **$21,439.15**. La señora Ríos, cual acordado con el señor Díaz, procedió al pago de la suma reclamada por el señor Álvarez. A su vez, este procedió a la entrega al señor Díaz del original del pagaré[5].

Así pues, el 30 de marzo de 2023, el señor Díaz desistió de su causa de acción en cuanto al codemandado, señor Álvarez, por lo que, en esa misma fecha, presentó un *Demanda Enmendada* de la cual excluyó al señor Álvarez[6]. El 3 de abril de 2023, notificada el 5, el foro primario dictó la *Sentencia Parcial* correspondiente[7].

El 9 de abril de 2023, la señora Ríos presentó su *Contestación a la demanda enmendada y reconvención*[8]. En síntesis, aceptó la existencia del contrato de compraventa. Adujo que, al pagar una cantidad mayor por concepto de la cancelación de la hipoteca, el balance de lo adeudado al señor Díaz se había reducido. Es decir, ella pagó $21,439.15 (en vez de $19,000.00) para cancelar la deuda hipotecaria; además, había hecho abonos a la deuda asumida con el señor Díaz por la cantidad de $25,000.00; por lo tanto, lo aún adeudado al señor Díaz ascendía a $42,560.85.

En cuanto a su reconvención, la señora Ríos adujo que celebró un contrato de compraventa con el señor Díaz, quien posteriormente pretendió alterar el precio del bien inmueble y luego se negó a recibir el balance adeudado. Advirtió que ello configuraba el incumplimiento del contrato y las obligaciones asumidas por el señor Díaz. Sostuvo que, como resultado del referido incumplimiento, se vio obligada a incurrir en gastos innecesarios y, adicionalmente, había sufrido angustias mentales. Por tanto, solicitó

---

[5] *Véase*, apéndice del recurso, a las págs. 5-6.

[6] *Íd.*, a las págs. 7-9.

[7] *Íd.*, a las págs. 10-11.

[8] *Íd.*, a las págs. 15-19.

resarcimiento por los daños cuyas partidas presuntamente ascendían a una suma global en exceso de $10,000.00.

El 22 de mayo de 2023, el señor Díaz presentó su contestación a la reconvención[9]. En síntesis, negó que se hubiera perfeccionado un contrato de compraventa. En particular, sostuvo que el acuerdo al que se refería la señora Ríos era un borrador que recogía el precio acordado. Señaló que había sido el incumplimiento de la señora Ríos lo que había provocado que el contrato no se otorgara, lo que desembocó en la presentación de la demanda original. Además, planteó que, como consecuencia del incumplimiento, tuvo que incurrir en gastos y pérdidas irrazonables para recuperar la posesión de su inmueble.

Así las cosas, el 4 de diciembre de 2023, el señor Díaz presentó una moción a través de la cual solicitó al foro primario que diera por admitidos ciertos requerimientos de admisiones[10]. En su escrito, expuso que, allá para el 23 de junio de 2023, le había remitido a la señora Ríos un pliego de interrogatorio, junto con una solicitud de documentos y requerimiento de admisiones. **Expuso que el requerimiento fue contestado por la señora Ríos el 11 de julio de 2023**. No obstante, planteó que las objeciones de la señora Ríos a los requerimientos 4 y 7 al 20 no cumplían con las disposiciones de la Regla 32 de Procedimiento Civil, 32 LPRA Ap. V, por lo que le insistió en que debía contestar los requerimientos de admisiones. Al no tener éxito, procedió a solicitarle al Tribunal que emitiera una orden y declarara los requerimientos cursados y no contestados como admitidos.

El 2 de enero de 2024, el Tribunal de Primera Instancia emitió una orden mediante la cual declaró con lugar la moción presentada por el señor Díaz sobre los requerimientos de admisiones. El tribunal fundamentó su determinación en que, transcurrido el término aplicable, según dispuesto en la Regla 8.4 de Procedimiento Civil, 32 LPRA Ap. V, la parte demandada no se había opuesto oportunamente a la solicitud de la parte demandante.

---

[9] *Véase*, apéndice del recurso, a las págs. 33-36.

[10] *Íd.*, a las págs. 57-64.

Inconforme con la referida determinación, el 17 de enero de 2024, la señora Ríos presentó una moción de reconsideración[11]. En síntesis, adujo que la carta cursada por el señor Díaz en aras de objetar las contestaciones al requerimiento de admisiones se había presentado de manera tardía. En particular, sostuvo que, a la fecha del envío de la carta que objetaba las contestaciones, habían transcurrido más de 30 días de finalizado el descubrimiento de prueba y más de 30 días desde que el señor Díaz había recibido las contestaciones al requerimiento de admisiones.

Pendiente aún la moción de reconsideración, el 18 de enero de 2024, el señor Díaz presentó una solicitud de sentencia sumaria[12]. Esta estuvo basada fundamentalmente en las alegaciones que habían sido presuntamente admitidas por la señora Ríos. A la luz de ello, solicitó que el tribunal dictara sentencia a su favor y ordenara la devolución del inmueble objeto de controversia, así el pago de una suma razonable por concepto de renta. En cuanto a la renta mensual, alegó que esta se estimaba en $800.00.

Tras varias incidencias procesales, el 2 de abril de 2024, el Tribunal de Primera Instancia notificó a las partes una primera *Sentencia* mediante la cual declaró con lugar la solicitud de sentencia sumaria presentada por el señor Díaz y, en su consecuencia, ordenó la devolución del inmueble, más las sumas reclamadas. En su dictamen, resumió parte del tracto procesal, en específico, lo que tenía que ver con la moción de reconsideración presentada por la señora Ríos y la sentencia sumaria pendiente de resolver.

Ante la referida determinación del foro *a quo,* el 9 de abril de 2024, la señora Ríos presentó una moción de relevo de sentencia. En síntesis, señaló que el tribunal incidió al emitir la sentencia, pues aún no había vencido el término para que la señora Ríos presentara su oposición a la solicitud de sentencia sumaria.

---

[11] *Véase*, apéndice del recurso, a las págs. 82-84.

[12] *Íd.*, a las págs. 85-99.

Atendida la solicitud de la señora Ríos, el Tribunal de Primera Instancia la declaró con lugar y dejó sin efecto la sentencia dictada el 2 de abril de 2024[13].

Posteriormente, la señora Ríos presentó su oposición a la solicitud de sentencia sumaria[14]. Nuevamente, arguyó que la controversia versaba sobre el incumplimiento del contrato por parte del señor Diaz, quien se había negado a reconocer que la señora Ríos había saldado la hipoteca según pactado, pero por una cantidad mayor a la que el señor Díaz le había acreditado. Adjuntó a su moción evidencia de los pagos realizados.

El 28 de mayo de 2023, la señora Ríos presentó una moción mediante la cual consignó ante el tribunal la suma de $42,400.00[15]. Reiteró que la referida suma correspondía al saldo total de la compraventa, según pactado entre las partes.

El Tribunal de Primera Instancia emitió su sentencia final el 5 de agosto de 2024[16]. Concluyó que, aun al acreditar todo pago reconocido por la señora Ríos, no existía controversia en cuanto a que el acuerdo o contrato entre las partes se había incumplido. Por tanto, declaró con lugar la demanda, ordenó la devolución de la propiedad y el pago de una renta a razón de $600.00 mensuales hasta el 30 de agosto de 2024, y $800.00 mensuales, hasta su eventual desalojo.

Inconforme con la determinación, el 21 de agosto de 2024, la señora Ríos presentó una moción de reconsideración[17]. En resumen, estableció que de las alegaciones de la demanda se desprendía que la controversia no se reducía a un cobro de dinero, sino a una acción por incumplimiento de contrato. Además, señaló que no surgía evidencia alguna sobre el valor de la renta, lo cual impedía que el tribunal pudiera imponer la misma. Nuevamente, señaló la incongruencia respecto al balance de la liquidación

---

[13] *Véase,* apéndice del recurso, a la pág. 146.

[14] *Íd.*, a las págs. 148-205.

[15] *Íd.*, a las págs. 207-208.

[16] *Íd.*, a las págs. 213-223.

[17] *Íd.*, a la pág. 224.

de la hipoteca. Adujo que persistían controversias sustanciales que impedían que el foro primario adjudicara la controversia; entre ellas, si se había configurado un contrato de arrendamiento y si el señor Díaz podía negarse a reconocer el pago de la totalidad del gravamen hipotecario.

El 9 de septiembre de 2024, el tribunal declaró sin lugar la moción de reconsideración presentada por la señora Ríos.

Aún en desacuerdo con la determinación del foro primario, el 10 de octubre de 2024, la señora Ríos compareció ante este foro y formuló los siguientes señalamientos de error:

> Incidió el Tribunal de Primera Instancia al dictar sentencia sumaria conforme lo solicitado por la parte demandante apelada mediante mecanismo de una acción de desahucio cuando el procedimiento correcto era tramitarse el reclamo de la parte demandante a través de una acción conforme al Artículo 1077 del Código Civil de 1930, 31 LPRA sec. 3052, sobre derecho de resolver obligaciones recíprocas.

> Erró el Tribunal de Primera Instancia al decretar con lugar el desahucio condenando al pago de renta a la parte demandada a pesar de que no existía un contrato de arrendamiento entre las partes y menos aún sobre cantidad de pago de renta.

(Énfasis omitido).

Por su parte, el 12 de noviembre de 2024, el señor Díaz presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, resolvemos.

II

A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que, "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

B

El contrato de compraventa objeto de la controversia en este caso se otorgó el 19 de octubre de 2019. Por tanto, a pesar de que el Código Civil de Puerto Rico, Ed. 1930, 31 LPRA sec. 1, *et seq.*, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de

2020, Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 5311, *et seq.*, a la controversia de autos le aplica el derogado Código Civil[18].

Aclarado esto, reiteramos que en nuestro ordenamiento jurídico se considera que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992.

En cuanto a los contratos, el Art. 1044 del Código Civil disponía que "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos". 31 LPRA sec. 1994. En cuanto a ello, el Tribunal Supremo de Puerto Rico ha reiterado que "un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar5 algún servicio". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014).

Ahora bien, según dispuesto en nuestro ordenamiento, los contratos serán válidos solo cuando concurran tres elementos: consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA sec. 3391. Cabe resaltar que el Art. 1230 establecía que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". 31 LPRA sec. 3451.

De otra parte, el principio de la autonomía contractual "permite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a las págs. 455-456; Art. 1207 del Código Civil, 31 LPRA sec. 3372. Esa autonomía estará limitada únicamente, y el contrato será nulo e inexistente, si este último resulta contrario a las leyes, a la moral o al orden público. 31 LPRA sec. 3372; *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a la pág. 456.

---

[18] Cualquier mención subsiguiente al Código Civil de Puerto Rico se entenderá que es a su edición de 1930, aplicable a los hechos del caso.

Ahora bien, en los casos de incumplimiento, el Art. 1077 del Código Civil, 31 LPRA sec. 3052, establece una condición resolutoria tácita en todo contrato bilateral, que opera *ex propio vigore*. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Específicamente, permite al perjudicado optar entre exigir el cumplimiento de la obligación o su resolución, y solicitar indemnización por las repercusiones desfavorables sobre su patrimonio. *Íd.*

No obstante, "en la doctrina civilista se entiende que el ejercicio del derecho de resolución *no* debe ser utilizado en todas las situaciones, ya que la buena fe en la contratación puede imponer alguna moderación a este resultado". *Íd.* (bastardillas en el original). Así pues, la resolución del contrato podría proceder cuando ocurre un cumplimiento parcial o defectuoso, que implique la frustración de la finalidad contractual para la parte perjudicada. *Íd.*, a las págs. 19-20. "En los demás casos, en que la prestación se ha efectuado parcialmente o resulta defectuosa, será procedente exigir el cumplimiento total o libre de defectos y, en los casos que proceda, una reducción proporcional del precio". *Íd.*, a la pág. 20.

De otra parte, **en materia de contratos recíprocos, el principio general que prima es que ninguna de las partes puede requerir el cumplimiento de la obligación contraria sin haber cumplido u ofrecido el cumplimiento de la propia**. *Íd.* Dicha excepción es conocida como la *excepción de contrato no cumplido. Íd.*

A su vez, esta tiene una modalidad conocida como la *excepción de contrato no cumplido adecuadamente*, la cual constituye una defensa disponible a la parte demandada, oponible a la parte demandante que pretende exigir el cumplimiento de una obligación, a pesar de haber cumplido parcial o defectuosamente la suya. *Íd.*, a la pág. 21. **Su efecto primordial es que la parte demandada no estará obligada a cumplir su obligación, hasta tanto la parte demandante no haga lo propio**. *Íd.*, a la pág. 22.

Sin embargo, el demandado no podrá invocar con éxito la doctrina en los casos en que su aplicación pueda resultar contraria al principio de la

buena fe en la contratación. *Álvarez v. Rivera*, 165 DPR, a la pág. 22. Tampoco la podrá invocar con éxito si "admitió la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los defectos, ya que iría contra sus propios actos". *Íd.*

C

En lo pertinente al caso que nos ocupa, los requerimientos de admisiones están regulados por la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico ha explicado que:

> [...]. Los requerimientos de admisiones cumplen una función importante en nuestro sistema adversativo, pues sirven como un instrumento sencillo y económico para delimitar las controversias del caso. [...]. Así lo reconocimos en *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997), donde expresamos que la Regla 33 de Procedimiento Civil [...], que regula lo relativo al requerimiento de admisiones, persigue "aligerar los procedimientos para definir y limitar las controversias del caso y proporcionar así un cuadro más claro sobre éstas". [...].

> A través de un requerimiento de admisiones una parte puede requerir a la otra que admita la veracidad de cualquier materia que esté dentro del alcance [del descubrimiento de prueba], **respecto a cuestiones u opiniones de hechos** o con la aplicación de la ley a los hechos, o que admita la autenticidad de cualquier documento que se acompañe con el requerimiento. [...]. **El efecto de dicha admisión es que releva a la parte adversa de tener que presentar en el juicio prueba del hecho admitido y de esta forma propicia que se acorte la audiencia y que no se incurra en gastos innecesarios**. [...]. **Por lo tanto, la admisión de un requerimiento se considerará definitiva, salvo que el tribunal permita su retiro o una enmienda a ésta**.

> La parte interpelada tiene que admitir o negar lo requerido bajo juramento o presentar una objeción escrita sobre la materia en cuestión dentro del término de 20 días. Si ésta no cumple con este término, "las cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas". [...]. El requerido tiene un deber afirmativo de responder y de efectuar las gestiones necesarias para obtener la información para admitir o negar.

*Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 171-172 (2007). (Énfasis nuestro; citas omitidas).

De otra parte, la Regla 34 de Procedimiento Civil, 32 LPRA Ap. V, regula lo relacionado a las controversias que puedan surgir en torno al descubrimiento, la negativa a descubrir lo solicitado y sus consecuencias. En específico, la Regla 34.1 provee el procedimiento que se utiliza para requerir del tribunal, mediante moción, que dicte una orden para que se

obligue a la parte promovida a descubrir lo solicitado. La misma dispone que:

> [c]uando surja una controversia en torno al descubrimiento de prueba, el tribunal sólo considerará las mociones que contengan una certificación de la parte promovente en la que indique al tribunal **en forma particularizada que ha realizado esfuerzos razonables, con prontitud y de buena fe, para tratar de llegar a un acuerdo con el abogado de la parte adversa para resolver los asuntos que se plantean en la moción y que éstos han resultado infructuosos**.

(Énfasis nuestro).

A su vez, la Regla 34.2 dispone que:

> [l]uego de que la **parte promovente haya realizado con prontitud esfuerzos razonables y de buena fe con la parte adversa y ésta se niega a descubrir lo solicitado, la parte promovente de una moción bajo esta regla podrá requerir al tribunal que dicte una orden para que se obligue a la parte promovida a descubrir lo solicitado, según se dispone a continuación**.

(Énfasis nuestro).

De otra parte, es norma reiterada que, en nuestra jurisdicción, existe una clara política judicial a favor de que los casos se ventilen en sus méritos. *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 334 (2010). "Se considera un interés importante que los litigantes tengan su día en corte y que las partes no se vean perjudicadas por los actos o las omisiones de su abogado". *Íd.*

III

Ante nos, la parte apelante señala que el Tribunal de Primera Instancia incidió al declarar con lugar la solicitud de sentencia sumaria presentada por la parte apelada. Ello, por considerar que el procedimiento apropiado era una acción por incumplimiento de obligaciones recíprocas y no una de desahucio. Además, en su segundo señalamiento de error, plantea que el foro primario erró al ordenar el desahucio y el pago de una renta, a pesar de que no se presentó contrato de arrendamiento alguno o prueba sobre la cantidad de renta a pagar.

En cuanto a su primer señalamiento de error, la parte apelante arguye que la controversia a dilucidar por el foro primario se reducía a

determinar si había mediado o no un incumplimiento en el pago de la obligación. Sostuvo que, de haber surgido un incumplimiento, solo restaba examinar si existía una causa justificada que ameritara establecer un plazo para su cumplimiento, según permitido por el Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052.

Al discutir el segundo señalamiento de error, arguyó que no procedía el desahucio, dado que no disfrutaba del inmueble en precario, ni se configuraba ninguna de las situaciones contempladas en el Art. 621 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 2823. Adujo que el canon de arrendamiento impuesto por el tribunal resultaba improcedente en la medida en que la parte apelada no había presentado prueba alguna sobre un contrato de arrendamiento o su valor. Finalmente, recalcó que persistía la controversia respecto a si el señor Díaz debió reconocer como parte del precio de compraventa la cantidad pagada en exceso para el saldo de la hipoteca que gravaba el inmueble.

Por su parte, el apelado arguye que la causa de acción apropiada e instada era una de desahucio, cobro de dinero e incumplimiento de contrato. Insistió en que las partes litigantes habían suscrito un acuerdo mediante el cual la señora Ríos se había obligado a realizar varios pagos con fecha cierta; pagos con los que incumplió. Ello, a pesar de que la apelada ocupaba el inmueble objeto de controversia desde el 2019. Adujo que, ante el incumplimiento de la referida obligación material, podía optar por la resolución del contrato y el resarcimiento de daños. Finalmente, sostuvo que no estaba obligado a recibir las cantidades consignadas, toda vez que el contrato había sido resuelto debido a los incumplimientos de la parte apelante.

En cuanto al segundo señalamiento de error, sostuvo que el canon de $800.00 representaba el valor de habitar exclusivamente el bien inmueble. Además, planteó que el Tribunal Supremo de Puerto Rico ha validado la imposición de un canon de este tipo en situaciones en que, de no hacerlo, se podría configurar un enriquecimiento injusto. Por tanto,

arguyó que, en la medida en que procediera la resolución del contrato de compraventa, también procedía el pago de una renta, ya que la apelada había ocupado la propiedad desde octubre del 2019.

Evaluadas las sendas posturas de las partes litigantes, la totalidad de las circunstancias y el derecho aplicable, concluimos que en este caso el foro primario incidió al declarar con lugar la moción de sentencia sumaria según presentada por la parte apelada. Veamos.

Lo primero que debemos atender es si el Tribunal de Primera Instancia incidió al dar por admitidos los requerimientos de admisiones. En este caso, surge claramente que la apelante contestó el requerimiento que le fue cursado el 14 de julio de 2023[19]. Si bien la parte apelada pretendió objetar las contestaciones, la carta cursada con ese fin **fue presentada fuera del término para ello**. En particular, debemos resaltar que el descubrimiento de prueba concluyó el 17 de octubre de 2023, y la carta de objeción al mismo fue enviada el 20 de noviembre de 2023; es decir, en exceso de los 30 días de finalizado el descubrimiento de prueba, y más de 30 días desde que recibió las contestaciones al requerimiento. **En virtud de lo anterior, concluimos que no procedía dar por admitidos los requerimientos de admisiones y, por tanto, dejamos sin efecto la determinación del foro primario que así lo ordenó.**

Según discutimos, no procede resolver un caso por la vía sumaria cuando existen hechos materiales y esenciales controvertidos. Examinados los documentos presentados y las sendas posturas de las partes comparecientes, concluimos que subsisten controversias sustanciales, que impiden disponer del pleito de manera sumaria. En particular, respecto al balance adeudado a la parte apelada. Recordemos que el señor Díaz acreditó que el balance de liquidación de su obligación hipotecaria con el señor Álvarez era de $19,000.00. No obstante, el pagaré hipotecario no le fue entregado por el señor Álvarez sino hasta que la señora Díaz le saldó el préstamo por la cantidad aún adeudada por el señor

---

[19] *Véase*, apéndice del recurso, a la pág. 51.

Díaz, que ascendió a $21,438.00. Este asunto, valga apuntar, fue planteado por la parte apelante en su reconvención, la cual no fuera atendida por el foro primario.

Además, como advertimos, el ejercicio del derecho de resolución no debe ser utilizado en todas las situaciones. En esta ocasión, la situación antes descrita implicaría necesariamente que, previo al supuesto impago de la parte apelante, la parte apelada ya había incumplido con los términos pactados en el contrato, pues la cantidad que había certificado para la liquidación del préstamo hipotecario no era correcta. Como advertimos, **en materia de contratos recíprocos, el principio general que prima es que ninguna de las partes puede requerir el cumplimiento de la obligación contraria sin haber cumplido u ofrecido el cumplimiento de la propia**.

Finalmente, concluimos que el Tribunal de Primera Instancia abusó de su discreción no solo al decretar el desahucio de la parte apelante, sino al adjudicar una renta mensual de $800.00, sin contar con prueba alguna en apoyo de tal determinación.

IV

Por los fundamentos expuestos, dejamos sin efecto la orden emitida el 2 de enero de 2024, que dio por admitidos los requerimientos de admisiones notificados por la parte apelada a la parte apelante y revocamos la *Sentencia* emitida por el Tribunal de Primera Instancia el 5 de agosto de 2024, notificada al día siguiente. En su consecuencia, devolvemos el caso ante la consideración del foro primario con el fin de que este resuelva de conformidad a lo dispuesto en esta *Sentencia* y con el apercibimiento de que existe una reconvención pendiente de su atención.

La juez Lebrón Nieves concurre con el resultado, sin opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones